# SETTLEMENT AGREEMENT

This Settlement Agreement (Agreement) is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General of the Department of Health and Human Services(OIG-HHS), the Defense Health Agency (DHA), acting on behalf of the TRICARE Program; (collectively, the "United States"), the State of Georgia (the "State"), Defendant Lake Country Pharmacy and Compounding Center ("Lake Country"), Defendant Chris Vaughan, and Defendant Carey Vaughan (collectively, "LCPCC"), and Chris Coleman ("Relator") (hereafter collectively referred to as "the Parties"), through their authorized representatives.

## RECITALS

A. LCPCC is a compounding pharmacy located in Greensboro, Georgia that dispenses drugs, including compounded drugs, to Medicare, TRICARE, and Medicaid beneficiaries and subsequently bills those programs for those services.

B. On June 10, 2016, Chris Coleman filed a qui tam action in the United States District Court for the Middle District of Georgia captioned *United States ex rel. Coleman v. Lake Country Pharmacy & Compounding Center, et al.*, 3:16-cv-53-CDL (M.D. Ga.), pursuant to the qui tam provisions of the False Claims Act, 31 U.S.C. § 3730(b) and the Georgia False Medicaid Claims Act, O.C.G.A. §§ 49-4-168, *et seq.* (the Civil Action). In that Complaint, Relator alleged that LCPCC improperly billed Medicare, TRICARE, and Medicaid for compounded drugs, as if those compounded drugs were made with reimbursable tablets when in fact said compounded drugs were made using non-reimbursable bulk powders, resulting in the submission of false claims under the False Claims Act, 31 U.S.C. § 3729(a) and the Georgia False Medicaid Claims Act, O.C.G.A. § 49-4-168.1. Simultaneously with the filing of this settlement, the United States and the State will intervene in the matter.

C. The United States contends that LCPCC submitted or caused to be submitted claims for payment to the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 ("Medicare"); the Medicaid Program, 42 U.S.C. §§ 1396-1396w-5 ("Medicaid"); and the TRICARE Program, 10 U.S.C. §§ 1071-1110b ("TRICARE"). The State contends that LCPCC submitted or caused to be submitted claims for payment to the Medicaid Program.

D. The United States contends that it has certain civil claims against LCPCC arising from the submission of claims for compounded medications dispensed to Medicare, TRICARE, and Medicaid beneficiaries during the period from January 1, 2013, through December 31, 2016, that were in fact made with non-reimbursable bulk powders but were billed as if they were made from reimbursable tablets. That conduct is referred to below as the "Federal Covered Conduct."

E. The State contends that it has certain civil claims against LCPCC arising from the submission of claims for compounded medications dispensed to Medicaid beneficiaries during the period from January 1, 2013, through December 31, 2016, that were in fact made with non-reimbursable bulk powders but were billed as if they were made from reimbursable tablets. That conduct is referred to below as the "State Covered Conduct."

F. Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relator's reasonable expenses, attorneys' fees and costs.

G. LCPCC denies the allegations of the Civil Action.

H. Relator further contends in the Civil Action that he was retaliated against by LCPCC in violation of 31 U.S.C. § 3730(h) and O.C.G.A. § 49-4-168.4, which claims LCPCC and Relator have separately agreed to settle, and which claims and settlement are not intended to be addressed by this Agreement.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

TERMS AND CONDITIONS

1. LCPCC shall pay to the United States the sum of three hundred sixty-five thousand dollars ($365,000) (Settlement Amount), all of which is restitution. This Settlement Amount shall be paid as follows:

a. Within 30 days of the Effective Date of this Agreement, Lake Country will make a payment to the United States in the amount of sixty-eight thousand dollars ($68,000), Chris Vaughan will make a payment to the United States in the amount of forty thousand dollars ($40,000), and Carey Vaughan will make a payment to the United States in the amount of forty thousand dollars ($40,000). These payments shall be made by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the Middle District of Georgia.

b. The remaining two hundred seventeen thousand dollars ($217,000) of the Settlement Amount shall be paid to the United States by Lake Country over a period of seven years at 3.000% interest, per annum, in the form of Revenue Based Annual Payments. Revenue Based Annual Payments shall be owed the on the following dates:

| **Payment Number** | **Payment Date** | **Amount Due** |
|---|---|---|
| Revenue Based Annual Payment 1 | February 3, 2020 | To be calculated per para. 1.c, *infra* |
| Revenue Based Annual Payment 2 | February 1, 2021 | To be calculated per para. 1.c, *infra* |
| Revenue Based Annual Payment 3 | February 1, 2022 | To be calculated per para. 1.c, *infra* |
| Revenue Based Annual Payment 4 | February 1, 2023 | To be calculated per para. 1.c, *infra* |

| | | |
|---|---|---|
| Revenue Based Annual Payment 5 | February 1, 2024 | To be calculated per para. 1.c, *infra* |
| Revenue Based Annual Payment 6 | February 3, 2025 | To be calculated per para. 1.c, *infra* |
| Revenue Based Annual Payment 7 | February 2, 2026 | To be calculated per para. 1.d, *infra* |

c. Revenue Based Annual Payments 1-6 shall be in the amount of $31,000, unless Lake Country's net revenues, as calculated in paragraph 1.e, over the previous year are less than $1.5MM. If the net revenues of LCPCC are less than $1.5MM, the amount to be paid pursuant to paragraph 1.b, *supra*, shall be calculated based upon the table contained in Exhibit A. Additionally, the difference between the calculated Revenue Based Annual Payment and $31,000 shall still be owed, but its payment shall be deferred until Revenue Based Annual Payment 7.

d. Revenue Based Annual Payment 7 shall include all of the Settlement Amount still owing as of February 1, 2026. This will include a $31,000 payment, all interest owed on the Settlement Amount, and all sums of money deferred from Revenue Based Annual Payments 1-6.

e. The following terms and conditions also apply to the payment schedule set forth in paragraphs 1.b-d:

i. Chris Vaughan and Carey Vaughan shall execute the personal guarantees of the Settlement Amount, attached hereto as Exhibits B and C, at the time of execution of this Settlement Agreement;

ii. There shall be no penalties for early repayment of the Settlement Amount;

iii. Net Revenue shall be established through the production of tax returns from Lake Country, Chris Vaughan, and Carey Vaughan, as prepared by their

C.P.A.(s), together with a certification from said C.P.A.(s) as to the accuracy of said returns. These materials shall be sent by certified mail to the United States Attorney's Office for the Middle District of Georgia, Attention: Financial Litigation Unit prior to the due date for that Revenue Based Annual Payment.

iv. United States Attorney's Office for the Middle District of Georgia reserves the right to ask for additional financial information concerning any Net Revenue calculations, which shall be produced within thirty (30) days of a written request from the United States Attorney's Office for the Middle District of Georgia.

2. Conditioned upon the United States receiving any Settlement Amount payments, the United States agrees that it shall pay to Relator's counsel, Bracker & Marcus LLC, by electronic funds transfer twenty (20) percent of each such payment received under the Settlement Agreement as soon as feasible after receipt of the payment.

3. LCPCC shall pay to counsel for the Relator a total sum of $35,000 for Relator's attorney's fees, costs, and expenses, pursuant to written instructions provided by counsel for the Relator. An initial payment of $10,000 shall be made on or before July 1, 2019, and five annual payments of $5,000 shall be subsequently made on or before April 1 of 2020 thru 2024. There shall be no penalties for early payment.

4. As long as LCPCC is in compliance with the terms of this Agreement, the Government covenants not to sue LCPCC for the Federal and State Covered Conduct. Subject to the exceptions in Paragraph 8 (concerning excluded claims) below, and conditioned upon LCPCC's full payment of the Settlement Amount, and subject to Paragraph 23, below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or any payment made under this Agreement), upon timely payment in full of the Settlement Amount together with all accrued interest: (a) the United States' covenant will mature in a release by the

United States of LCPCC from any civil or administrative monetary claim the United States has or may have for the Federal Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud; (b) the State of Georgia's covenant will mature into a release by the State of Georgia of LCPCC from any civil or administrative monetary claim the State of Georgia has for the State Covered Conduct under the Georgia False Medicaid Claims Act, O.C.G.A. §§ 49-4-168, *et seq.*; or the common law theories of payment by mistake, unjust enrichment, breach of contract and fraud.

5. Subject to the exceptions in Paragraph 8 below, and conditioned upon LCPCC's full payment of the Settlement Amount and Relator's attorney's fees, costs, and expenses, and subject to Paragraph 23, below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or any payment made under this Agreement), Relator, for himself and for his heirs, successors, attorneys, agents, and assigns, releases LCPCC from any civil monetary claim the Relator has on behalf of the United States under the False Claims Act, 31 U.S.C. §§ 3729-3733 or on behalf of the State of Georgia under the Georgia False Medicaid Claims Act, O.C.G.A. §§ 49-4-168, *et seq.* as of the Effective Date of this Agreement.

6. In consideration of the obligations of LCPCC in this Agreement and the Integrity Agreement (IA), entered into between OIG-HHS and LCPCC and conditioned upon LCPCC's full payment of the Settlement Amount, the OIG-HHS agrees to release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from Medicare, Medicaid, and other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) against LCPCC under 42 U.S.C. § 1320a-7a (Civil Monetary Penalties Law) or 42 U.S.C. § 1320a-7(b)(7) (permissive exclusion for fraud, kickbacks, and other prohibited activities) for the Federal Covered

Conduct, except as reserved in this Paragraph and in Paragraph 8 (concerning excluded claims), below. The OIG-HHS expressly reserves all rights to comply with any statutory obligations to exclude LCPCC from Medicare, Medicaid, and other Federal health care programs under 42 U.S.C. § 1320a-7(a) (mandatory exclusion) based upon the Federal Covered Conduct. Nothing in this Paragraph precludes the OIG-HHS from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph 8, below.

7. In consideration of the obligations of LCPCC set forth in this Agreement, and conditioned upon LCPCC's full payment of the Settlement Amount, DHA agrees to release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from the TRICARE Program against LCPCC [under 32 C.F.R. § 199.9 for the Federal Covered Conduct, except as reserved in this Paragraph and in Paragraph 8 (concerning excluded claims), below. DHA expressly reserves authority to exclude LCPCC from the TRICARE Program under 32 C.F.R. §§ 199.9 (f)(1)(i)(A), (f)(1)(i)(B), and (f)(1)(iii) (mandatory exclusion), based upon the Federal Covered Conduct. Nothing in this Paragraph precludes DHA or the TRICARE Program from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph 7, below.

8. Notwithstanding the releases given in paragraphs 4, 6 and 7 of this Agreement, or any other term of this Agreement, the following claims of the United States and the State are specifically reserved and are not released:

a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code) or the Georgia Revenue and Taxation Code, O.C.G.A. §§ 48-1-1, *et seq.*;

b. Any criminal liability;

c. Except as explicitly stated in this Agreement, any administrative liability, including mandatory exclusion from Federal or State health care programs;

d. Any liability to the United States (or its agencies) for any conduct other than the Federal Covered Conduct;

e. Any liability based upon obligations created by this Agreement;

f. Any liability to the State (or its agencies) for any conduct other than the State Covered Conduct; or

g. Any civil or administrative liability that any person or entity, including any released entities, has or may have to the State of Georgia or to individual consumers or state program payors under any statute, regulation, or rule not expressly covered by releases above, including but not limited to, any and all of the following claims: (i) State of Georgia or federal antitrust violations; (ii) claims involving unfair and/or deceptive acts and practices and/or violations of consumer protection laws.

9. Relator and his heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B) and O.C.G.A. § 49-4-168.2. Conditioned upon Relator's receipt of the payment described in Paragraph 2, Relator and his heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730 or O.C.G.A. § 49-4-168.2, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

10. Conditioned upon receipt of the payments described in Paragraphs 1 and 3, Relator, for himself, and for his heirs, successors, attorneys, agents, and assigns, releases LCPCC, and its officers, agents, and employees, from any liability to Relator arising from the filing of the Civil Action, or under 31 U.S.C. § 3730(d) for expenses or attorney's fees and costs, excepting that

Relator expressly does not release any claims he may have for retaliation under 31 U.S.C. § 3730(h) or O.C.G.A. § 49-4-168.4, which have been resolved by separate agreement.

11. LCPCC has provided sworn financial disclosure statements (Financial Statements) to the United States, and the United States has relied on the accuracy and completeness of those Financial Statements in reaching this Agreement. LCPCC warrants that the Financial Statements are complete, accurate, and current as of the date shown thereon and submitted. If the United States learns of asset(s) in which LCPCC had an interest at the time of this Agreement that were not disclosed in the Financial Statements, or if the United States learns of any misrepresentation by LCPCC on, or in connection with, the Financial Statements, and if such nondisclosure or misrepresentation changes the estimated net worth set forth in the Financial Statements by 10% or more, the United States may at its option: (a) rescind this Agreement and reinstate the current suit based on the Federal Covered Conduct, or (b) let the Agreement stand and collect the full Settlement Amount plus one hundred percent (100%) of the value of the net worth of LCPCC previously undisclosed. LCPCC agrees not to contest any collection action undertaken by the United States pursuant to this provision, and immediately to pay the United States all reasonable costs incurred in such an action, including attorney's fees and expenses.

12. In the event that the United States, pursuant to Paragraph 11 (concerning disclosure of assets), above, opts to rescind this Agreement, LCPCC agrees not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that (a) are filed by the United States within 90 calendar days of written notification to LCPCC that this Agreement has been rescinded, and (b) relate to the Federal Covered Conduct, except to the extent these defenses were available on the Effective Date of the Agreement.

13. In the event that LCPCC or Lake Country fails to pay in accordance with paragraph 1 on or prior to the dates indicated therein, LCPCC shall be in Default of its payment obligations (hereinafter "Default"). In the event of Default, the United States will provide written notice of the Default to the undersigned counsel and representative of LCPCC. If LCPCC fails to cure the Default within fifteen (15) business days of receipt of written notice of Default, the remaining unpaid balance of the Settlement Amount (Remaining Settlement Amount) shall become immediately due and payable, and interest shall accrue at the rate of 12% per annum compounded daily on the Remaining Settlement Amount from the date of Default until all amounts due have been paid in full. In the event of Default that is not cured after fifteen (15) business days, the United States, at its sole option, may: (a) enforce the Personal Guarantees attached hereto as Exhibit B; (b) collect the entire Remaining Settlement Amount, plus interest including 12% interest from the Date of Default, and all other amounts due upon the event of Default as specified in this paragraph; or (c) exercise any other rights granted by law or in equity, including but not limited to referring such matters for private collection. LCPCC agrees not to contest any offset imposed and LCPCC agrees not to contest, and hereby waives and discharges any defenses to, any collection action undertaken by the United States or its agents or contractors pursuant to this Paragraph, either administratively or in any state or federal court. LCPCC shall pay the United States all reasonable costs of collection and enforcement under this Paragraph applicable to them, respectively, including attorney's fees and expenses ("Collection Costs"). In the event of such Default, OIG-HHS may exclude LCPCC from participating in all Federal health care programs until LCPCC pay the Settlement Amount and reasonable costs as set forth in Paragraph 1, above, and in this paragraph. OIG-HHS will provide written notice of any such exclusion to LCPCC. LCPCC waives any further notice of the exclusion under 42 U.S.C. § 1320a-7(b)(7), and agrees not to contest such exclusion either administratively or in any state or federal court. Reinstatement to

program participation is not automatic. If at the end of the period of exclusion LCPCC wishes to apply for reinstatement, LCPCC must submit a written request for reinstatement to OIG-HHS in accordance with the provisions of 42 C.F.R. §§ 1001.3001-.3005. LCPCC will not be reinstated unless and until OIG-HHS approves such request for reinstatement.

14. LCPCC waives and shall not assert any defenses LCPCC may have to any criminal prosecution or administrative action relating to the Federal Covered Conduct or State Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

15. LCPCC fully and finally releases the United States, the State and their agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that LCPCC has asserted, could have asserted, or may assert in the future against the United States, the State and/or their respective agencies, officers, agents, employees, and servants, related to the Federal Covered Conduct and State Covered Conduct and the United States' and/or State's investigation and prosecution thereof.

16. LCPCC fully and finally releases the Relator from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that LCPCC has asserted, could have asserted, or may assert in the future against the Relator, related to the Civil Action and the Relator's investigation and prosecution thereof.

17. The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, TRICARE carrier or payer or any state payer, related to the Federal Covered Conduct; and LCPCC agrees not to resubmit to any Medicare

contractor, TRICARE contractor or payer or any state payer any previously denied claims related to the Federal Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

18. LCPCC agrees to the following:

a. Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of LPCCC, its present or former officers, directors, employees, shareholders, and agents in connection with:

(1) the matters covered by this Agreement;

(2) the United States' audit(s) and civil and any criminal investigation(s) of the matters covered by this Agreement;

(3) LCPCC's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil and any criminal investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

(4) the negotiation and performance of this Agreement;

(5) the payment LCPCC makes to the United States pursuant to this Agreement and any payments that LCPCC may make to Relator, including costs and attorney's fees; and

(6) the negotiation of, and obligations undertaken pursuant to the IA to: (i) retain an independent review organization to perform annual reviews as described in Section III of the IA; and (ii) prepare and submit reports to the OIG-HHS;

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as Unallowable Costs).

b. Future Treatment of Unallowable Costs: Unallowable Costs shall be separately determined and accounted for in nonreimbursable cost centers by LCPCC, and LCPCC shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by LCPCC or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

c. Treatment of Unallowable Costs Previously Submitted for Payment: LCPCC further agrees that within 90 days of the Effective Date of this Agreement it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by LCPCC or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. LCPCC agrees that the United States, at a minimum, shall be entitled to recoup from LCPCC any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United

States reserves its rights to disagree with any calculations submitted by LCPCC or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on LCPCC or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

d. Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine LCPCC's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

19. LCPCC agrees to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Agreement. Upon reasonable notice, LCPCC shall encourage, and agrees not to impair, the cooperation of its directors, officers, and employees, and shall use its best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. LCPCC further agrees to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning any investigation of the Federal Covered Conduct that it has undertaken, or that has been performed by another on its behalf.

20. This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 21 (waiver for beneficiaries paragraph), below.

21. LCPCC agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Federal or State Covered Conduct.

22. LCPCC warrants that it has reviewed its financial situation and that it currently is solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and shall remain solvent following payment to the United States of the Settlement Amount. Further, the Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to LCPCC, within the meaning of 11 U.S.C. § 547(c)(1), and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which LCPCC was or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

23. If within 91 days of the Effective Date of this Agreement or of any payment made under this Agreement, LCPCC commences, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking to have any order for relief of LCPCC's debts, or seeking to adjudicate LCPCC as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for LCPCC or for all or any substantial part of LCPCC's assets, LCPCC agrees as follows:

a. LCPCC's obligations under this Agreement may not be avoided pursuant to 11 U.S.C. § 547, and LCPCC shall not argue or otherwise take the position in any such case, proceeding, or action that: (i) LCPCC's obligations under this Agreement may be avoided under 11 U.S.C. § 547; (ii) LCPCC was insolvent at the time this Agreement was entered into, or became insolvent as a result of the payment made to the United States; or (iii) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to LCPCC.

b. If LCPCC's obligations under this Agreement are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the United States, at its sole option, may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against LCPCC for the claims that would otherwise be covered by the releases provided in Paragraphs 4, 6, and 7, above. LCPCC agrees that (i) any such claims, actions, or proceedings brought by the United States are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the action, case, or proceedings described in the first clause of this Paragraph, and LCPCC shall not argue or otherwise contend that the United States' claims, actions, or proceedings are subject to an automatic stay; (ii) LCPCC shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claims, actions, or proceeding that are brought by the United States within 90 calendar days of written notification to LCPCC that the releases have been rescinded pursuant to this Paragraph, except to the extent such defenses were available on Effective Date of this Agreement; and (iii) the United States has a valid claim against LCPCC in the amount of $2,207,569 plus penalties, and the United States may pursue its claim in the case, action, or proceeding referenced in the first clause of this Paragraph, as well as in any other case, action, or proceeding.

c. LCPCC acknowledges that its agreements in this Paragraph are provided in exchange for valuable consideration provided in this Agreement.

24. Upon receipt of the payment described in Paragraph 1.a, above, the Parties shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the *qui tam* claims in the Civil Action pursuant to Rule 41(a)(1).

25. Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

26. Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

27. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Middle District of Georgia. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

28. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

29. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

30. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

31. This Agreement is binding on LCPCC's successors, transferees, heirs, and assigns.

32. This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

33. All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

34. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

**THE UNITED STATES OF AMERICA**

DATED: __________ BY: ______________________________
TODD P. SWANSON
Assistant United States Attorney
Middle District of Georgia

DATED: 06/07/2019 BY: Lisa M Re
LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

DATED: __________ BY: ______________________________
LEIGH A. BRADLEY
General Counsel
Defense Health Agency
United States Department of Defense

**THE UNITED STATES OF AMERICA**

DATED: 6/12/19 BY: ______________________________
TODD P. SWANSON
Assistant United States Attorney
Middle District of Georgia

DATED: __________ BY: ______________________________
LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

DATED: 06/11/2019 BY: BLEY.PAUL.NICHOLAS.1099873821 Digitally signed by BLEY.PAUL.NICHOLAS.1099873821 Date: 2019.06.11 15:17:40 -04'00'
LEIGH A. BRADLEY
for General Counsel
Defense Health Agency
United States Department of Defense

**THE STATE OF GEORGIA**

DATED: 6/6/19 BY: ____________________
IRVAN A. PEARLBERG
Director, Medicaid Fraud Control Unit
RICHARD TANGUM
Senior Assistant Attorney General
Georgia Department of Law

DATED: 6/5/2019 BY: ____________________
RACHEL KING
General Counsel
State of Georgia Department of Community Health

**LAKE COUNTRY PHARMACY AND COMPOUNDING CENTER - DEFENDANT**

DATED: 6/6/19 BY: [signature]
Carey Vaughan
Title: CEO
Lake Country Pharmacy and Compounding Center

DATED: 6/7/19 BY: [signature]
J.D. DALBEY
Counsel for Lake Country Pharmacy and Compounding Center

**CHRIS VAUGHAN - DEFENDANT**

DATED: 6/6/19 BY: [signature]
CHRIS VAUGHAN

DATED: 6/7/19 BY: [signature]
J.D. DALBEY
Counsel for Chris Vaughan

**CAREY VAUGHAN - DEFENDANT**

DATED: 6/6/19 BY: [signature]
CAREY VAUGHAN

DATED: 6/7/19 BY: [signature]
J.D. DALBEY
Counsel for ~~Chris~~ Carey Vaughan

**CHRIS COLEMAN- RELATOR**

DATED: June 7, 2019 BY: ______________________
CHRIS COLEMAN

DATED: 6/7/19 BY: ______________________
JASON MARCUS
Counsel for Chris Coleman

# EXHIBIT A

***Table for Calculating Revenue Based Annual Payments***

| **Net Revenue Range** | **Revenue Based Annual Payment per Para. 1.b** | **Sum to be added to Revenue Based Annual Payment No. 7** |
|---|---|---|
| $1.5MM+ | $31,000 | $0 |
| $1.4MM - $1.5MM | $29,000 | $2,000 |
| $1.3MM - $1.4MM | $27,000 | $4,000 |
| $1.2MM - $1.3MM | $25,000 | $6,000 |
| $1.1MM - $1.2MM | $23,000 | $8,000 |
| $1M - $1.1MM | $21,000 | $10,000 |
| $900,000 - $1M | $19,000 | $12,000 |
| $800,000 - $900,000 | $17,000 | $14,000 |
| $700,000 - $800,000 | $15,000 | $16,000 |
| $600,000 - $700,000 | $13,000 | $18,000 |
| $500,000 - $600,000 | $11,000 | $20,000 |
| $400,000 - $500,000 | $9,000 | $22,000 |
| $300,000 - $400,000 | $7,000 | $24,000 |
| $200,000 - $300,000 | $5,000 | $26,000 |
| $100,000 - $200,000 | $3,000 | $28,000 |
| $0 - $100,000 | $1,000 | $30,000 |

# EXHIBIT B TO SETTLEMENT AGREEMENT

## GUARANTY AGREEMENT

This Guaranty Agreement is entered into as of March, 13, 2019 by and among Chris Vaughan (Guarantor) and the United States of America (United States) (collectively the Parties).

WHEREAS, a qui tam action was filed on June 10, 2016, presently styled as *United States ex rel. Coleman v. Lake Country Pharmacy & Compounding Center, et al.*, 3:16-cv-53-CDL (M.D.Ga.) (the Lawsuit) alleging violation of the False Claims Act;

WHEREAS, the parties to that action wish to settle, compromise, and resolve all issues and disputes between them in the qui tam action through the execution of a Settlement Agreement and the Exhibits thereto including this Guaranty Agreement;

WHEREAS, Guarantor is a named defendant in the Complaint in the Lawsuit and is released by the Settlement Agreement between the United States of America; State of Georgia; Lake Country Pharmacy & Compounding Center; Chris Vaughan; Carey Vaughan; and Chris Coleman. (Settlement Agreement);

WHEREAS, the United States intends to intervene in that action at or near the time of the filing of the Settlement Agreement in said action;

WHEREAS, at the time of execution of this Guaranty Agreement, Guarantor is a 50% owner of the Defendant Lake Country Pharmacy & Compounding Center ("Lake Country");

IT IS HEREBY AGREED that, in exchange for adequate consideration, the Parties shall undertake the following obligations:

TERMS AND CONDITIONS

1. Statement of Guaranty. The Guarantor unconditionally guarantees the prompt payment of all financial obligations of Lake Country as set forth in the Settlement Agreement.

2. Nature of Guaranty. The Guaranty set forth in Paragraph 1 of this Agreement constitutes a guaranty of payment of all financial obligations of Lake Country as set forth in the Settlement Agreement and shall not be affected by any event, occurrence or circumstance which might otherwise constitute a legal or equitable discharge or defense of a guarantor or surety (other than full and complete payment of all financial obligations). In the event that any payment by Lake Country of any financial obligations is rescinded or must otherwise be returned by virtue of any action by any bankruptcy court, the Guarantor shall remain liable hereunder with respect to such financial obligations as if payment had not been made. The Guarantor agrees that the United States may resort to Guarantor for payment of the Settlement Amount (as that term is defined in the Settlement Agreement) if Lake Country is in Default under terms of Paragraph 13 of the Settlement Agreement, without regard to whether the United States should have proceeded against any other person or entity primarily or secondarily obligated with respect to any of the financial obligations, which are set forth in the Settlement Agreement.

cv Q

3. Acceleration. Guarantor agrees that, within 20 calendar days of receipt of written notice from the United States that Lake Country has failed to make any payment required by the Settlement Agreement, Guarantor will pay in full the amount then due under the Settlement Agreement. Guarantor understands that the failure to adhere fully to the terms of this paragraph would be a material breach of this Guaranty Agreement.

4. No Waiver; Cumulative Rights. No failure on the part of the United States to exercise, and no delay in exercising, any right, remedy or power hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by the United States of any right, remedy or power hereunder preclude any other or future exercise of any right, remedy or power. Each and every right, remedy and power hereby granted to the United States or allowed by law or other agreement shall be cumulative and not exclusive of any other, and may be exercised by the United States from time to time.

5. Effective Date. This Guaranty Agreement shall become effective on the date the Settlement Agreement is executed.

6. Subrogation. Guarantor shall not exercise any subrogation rights it may acquire against Lake Country as a result of this Guaranty Agreement until all of the financial obligations to the United States have been paid in full.

7. Notice. Copies of all notices required to be furnished to Lake Country under the Settlement Agreement shall be furnished to Guarantor by regular or certified mail, or by facsimile transmission on the date the same are forwarded or transmitted to Lake Country. Any notices that must be sent to the Guarantor as required by this Agreement shall be sent by first class or express mail addressed to the following:

Chris Vaughan
1110 Commerce Drive, Suite 110
Greensboro, Georgia 30642-7444

With an electronic copy sent to:

J.D. Dalbey
jddalbey@cclblaw.com

8. Duration. This Guaranty shall continue in full force and effect until all of Lake Country's financial obligations, as required by the Settlement Agreement, have been paid in full or until it is determined, by the United States or pursuant to a final and non-appealable order of a court of competent jurisdiction, that Mr. Vaughan does not have any liability or obligations to the United States for the Settlement Amount or until all the Parties mutually agree in writing that this Guaranty Agreement shall be revoked.

9. Entire Agreement. Each Party hereto represents and warrants that the Settlement Agreement, including this Guaranty Agreement which is incorporated by reference into the Settlement Agreement, constitute a valid and binding agreement enforceable against each Party

cv Q

in accordance with its terms. The Settlement Agreement and the Exhibits thereto, including this Guaranty Agreement, embody the entire agreement among the Parties. There are no promises, terms, conditions, or obligations other than those contained in this Agreement. The Settlement Agreement and the Exhibits thereto, supersedes all previous communications, representations or agreements either verbal or written between Guarantor and the United States.

10. Severability. Should any one or more provisions of this Agreement be determined to be illegal, unenforceable, void or voidable, all other provisions shall remain in effect.

11. Assignment. No Party hereto may assign its rights, interest or obligations hereunder to any other person or entity without prior written consent of the other Party. The provisions of this Agreement shall be binding on the Parties hereto and their successors and assigns.

12. Miscellaneous. This Agreement shall not be amended except in a writing signed by all Parties. Each signatory hereto represents and warrants that he or she is authorized to execute and deliver this Agreement on behalf of the Party for whom he or she is purporting to act. This Agreement may be executed in counterparts, each of which shall constitute an original and all of which shall constitute one and the same agreement.

13. Governing Law; Consent to Jurisdiction. This Agreement shall be governed by and construed in accordance with the law of the State of Georgia. The Parties consent to the jurisdiction of the United States District Court for the Middle District of Georgia in any action to enforce any term of this Guaranty Agreement.

GUARANTOR

By: [signature] Dated: 3/13/19

Chris Vaughan

THE UNITED STATES OF AMERICA

By: [signature] Dated: 6/12/19

Todd P. Swanson
Assistant United States Attorney
United States Attorney's Office
Middle District of Georgia

CV

# EXHIBIT C TO SETTLEMENT AGREEMENT

## GUARANTY AGREEMENT

This Guaranty Agreement is entered into as of March, 13, 2019 by and among Carey Vaughan (Guarantor) and the United States of America (United States) (collectively the Parties).

WHEREAS, a qui tam action was filed on June 10, 2016, presently styled as *United States ex rel. Coleman v. Lake Country Pharmacy & Compounding Center, et al.*, 3:16-cv-53-CDL (M.D.Ga.) (the Lawsuit) alleging violation of the False Claims Act;

WHEREAS, the parties to that action wish to settle, compromise, and resolve all issues and disputes between them in the qui tam action through the execution of a Settlement Agreement and the Exhibits thereto including this Guaranty Agreement;

WHEREAS, Guarantor is a named defendant in the Complaint in the Lawsuit and is released by the Settlement Agreement between the United States of America; State of Georgia; Lake Country Pharmacy & Compounding Center; Chris Vaughan; Carey Vaughan; and Chris Coleman. (Settlement Agreement);

WHEREAS, the United States intends to intervene in that action at or near the time of the filing of the Settlement Agreement in said action;

WHEREAS, at the time of execution of this Guaranty Agreement, Guarantor is a 50% owner of the Defendant Lake Country Pharmacy & Compounding Center ("Lake Country");

IT IS HEREBY AGREED that, in exchange for adequate consideration, the Parties shall undertake the following obligations:

TERMS AND CONDITIONS

1. Statement of Guaranty. The Guarantor unconditionally guarantees the prompt payment of all financial obligations of Lake Country as set forth in the Settlement Agreement.

2. Nature of Guaranty. The Guaranty set forth in Paragraph 1 of this Agreement constitutes a guaranty of payment of all financial obligations of Lake Country as set forth in the Settlement Agreement and shall not be affected by any event, occurrence or circumstance which might otherwise constitute a legal or equitable discharge or defense of a guarantor or surety (other than full and complete payment of all financial obligations). In the event that any payment by Lake Country of any financial obligations is rescinded or must otherwise be returned by virtue of any action by any bankruptcy court, the Guarantor shall remain liable hereunder with respect to such financial obligations as if payment had not been made. The Guarantor agrees that the United States may resort to Guarantor for payment of the Settlement Amount (as that term is defined in the Settlement Agreement) if Lake Country is in Default under terms of Paragraph 13 of the Settlement Agreement, without regard to whether the United States should have proceeded against any other person or entity primarily or secondarily obligated with respect to any of the financial obligations, which are set forth in the Settlement Agreement.

cv

3. Acceleration. Guarantor agrees that, within 20 calendar days of receipt of written notice from the United States that Lake Country has failed to make any payment required by the Settlement Agreement, Guarantor will pay in full the amount then due under the Settlement Agreement. Guarantor understands that the failure to adhere fully to the terms of this paragraph would be a material breach of this Guaranty Agreement.

4. No Waiver; Cumulative Rights. No failure on the part of the United States to exercise, and no delay in exercising, any right, remedy or power hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by the United States of any right, remedy or power hereunder preclude any other or future exercise of any right, remedy or power. Each and every right, remedy and power hereby granted to the United States or allowed by law or other agreement shall be cumulative and not exclusive of any other, and may be exercised by the United States from time to time.

5. Effective Date. This Guaranty Agreement shall become effective on the date the Settlement Agreement is executed.

6. Subrogation. Guarantor shall not exercise any subrogation rights it may acquire against Lake Country as a result of this Guaranty Agreement until all of the financial obligations to the United States have been paid in full.

7. Notice. Copies of all notices required to be furnished to Lake Country under the Settlement Agreement shall be furnished to Guarantor by regular or certified mail, or by facsimile transmission on the date the same are forwarded or transmitted to Lake Country. Any notices that must be sent to the Guarantor as required by this Agreement shall be sent by first class or express mail addressed to the following:

Carey Vaughan
1110 Commerce Drive, Suite 110
Greensboro, Georgia 30642-7444

With an electronic copy sent to:

J.D. Dalbey
jddalbey@cclblaw.com

8. Duration. This Guaranty shall continue in full force and effect until all of Lake Country's financial obligations, as required by the Settlement Agreement, have been paid in full or until it is determined, by the United States or pursuant to a final and non-appealable order of a court of competent jurisdiction, that Mr. Vaughan does not have any liability or obligations to the United States for the Settlement Amount or until all the Parties mutually agree in writing that this Guaranty Agreement shall be revoked.

9. Entire Agreement. Each Party hereto represents and warrants that the Settlement Agreement, including this Guaranty Agreement which is incorporated by reference into the Settlement Agreement, constitute a valid and binding agreement enforceable against each Party

cv 4

in accordance with its terms. The Settlement Agreement and the Exhibits thereto, including this Guaranty Agreement, embody the entire agreement among the Parties. There are no promises, terms, conditions, or obligations other than those contained in this Agreement. The Settlement Agreement and the Exhibits thereto, supersedes all previous communications, representations or agreements either verbal or written between Guarantor and the United States.

10. Severability. Should any one or more provisions of this Agreement be determined to be illegal, unenforceable, void or voidable, all other provisions shall remain in effect.

11. Assignment. No Party hereto may assign its rights, interest or obligations hereunder to any other person or entity without prior written consent of the other Party. The provisions of this Agreement shall be binding on the Parties hereto and their successors and assigns.

12. Miscellaneous. This Agreement shall not be amended except in a writing signed by all Parties. Each signatory hereto represents and warrants that he or she is authorized to execute and deliver this Agreement on behalf of the Party for whom he or she is purporting to act. This Agreement may be executed in counterparts, each of which shall constitute an original and all of which shall constitute one and the same agreement.

13. Governing Law; Consent to Jurisdiction. This Agreement shall be governed by and construed in accordance with the law of the State of Georgia. The Parties consent to the jurisdiction of the United States District Court for the Middle District of Georgia in any action to enforce any term of this Guaranty Agreement.

GUARANTOR

By: ______________________ Dated: 3/13/19

Carey Vaughan

THE UNITED STATES OF AMERICA

By: ______________________ Dated: 6-12-19

Todd P. Swanson
Assistant United States Attorney
United States Attorney's Office
Middle District of Georgia